IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHARON MOTLEY, on behalf of herself and those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.  2:19-CV-478-WKW [WO] |
| HAL TAYLOR, in his official capacity as Secretary of the Alabama Law Enforcement Agency, | ) ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

On March 31, 2020, the court entered an order and final judgment, granting Defendant Hal Taylor's motion to dismiss, denying as moot Plaintiff Sharon Motley's motions for preliminary injunction and for class certification, and dismissing this action with prejudice.  (Docs. # 31, 32.)  Ms. Motley appealed. Shortly thereafter, the parties moved the Court of Appeals for the Eleventh Circuit to resolve whether intervening events had rendered this putative class action moot. The Eleventh Circuit directed the parties to seek an indicative ruling from this court, and they complied.  Pursuant to the Eleventh Circuit's directions, this opinion addresses "whether this case is moot and, if so, whether an exception to the mootness doctrine applies."  (Doc. # 38-2.)  For the reasons to follow, the court will issue an indicative ruling that Ms. Motley's claims became moot after the filing of this

lawsuit, but that the putative class claims fall within the inherently transitory exception to the mootness doctrine.

# I.  BACKGROUND

## A.    <u>Stipulated Facts</u>

The parties have stipulated to the material facts.  The stipulations are set out here for convenience.  (Doc. # 38-1, at 2–3.)

1.      Ms. Motley's license had been suspended since 2005.  Her license was initially suspended for failing to appear in the Montgomery Municipal Court on several traffic tickets.  The failure to appear suspensions were cleared in December 2018.

2.      On September 24, 2013, Ms. Motley pleaded guilty in the Montgomery County District Court to driving while suspended.  The Montgomery County District Court Judge ordered Ms. Motley to pay $310 in fines and court costs by November 19, 2013.

3.      After Ms. Motley failed to pay this amount, the Montgomery County District Court issued a suspension notice to ALEA (then DPS) for Failure to Pay on December 20, 2013.[1]  ALEA records indicate the effective date of its suspension of Ms. Motley's driver's license was January 8, 2014.  *See* Driver History Inquiry, Ex.

---

[1] ALEA is the acronym for "Alabama Law Enforcement Agency," and DPS is the acronym for "Department of Public Safety."

1 (Doc. # 38-1).  As of December 2018, the only reason Ms. Motley's driver's license was suspended was for failing to pay the traffic ticket in the Montgomery County District Court.

4.      In February 2019, Ms. Motley requested the Montgomery County District Court to place her on a traffic docket to receive a payment plan to repay her traffic ticket and court costs.

5.      In March 2019, the Montgomery County District Court ordered Ms. Motley to make installment payments in the amount of $25.00 per month.

6.      On February 14, 2020, a $5,000 settlement check was issued to Ms. Motley as a result of a legal settlement in a class action case entitled *Olsen, et al. v. Context Logic, Inc.*, No. 2019-CH-06737.  *See* Settlement Check, Ex. 2 (Doc. # 38-1).  Ms. Motley served as a class representative in that case, which alleged that ContextLogic sent text message advertisements to her cell phone number without obtaining her prior express written consent in violation of the Telephone Consumer Protection Act.  *See* Settlement Agreement, Ex. 3 (Doc. # 38-1).

7.      On February 19, 2020, Ms. Motley paid the remaining balance on her ticket, as well as the $100 reinstatement fee and $50 late fee to ALEA, and obtained removal of the suspension of her license for failure to pay the 2013 ticket.  *See* Driver History Inquiry, Ex. 1 (Doc. # 38-1); Driver History Abstract at 2, Ex. 4 (Doc. # 38-1).

8.     As of February 19, 2020, Ms. Motley's driver's license was placed in a "valid status" by ALEA. Since her license had been suspended since 2005, Ms. Motley had to pass the complete examination (vision/written/skills) to obtain a valid Alabama driver's license.

9.     On March 3, 2020, the State of Georgia issued Ms. Motley a driver's license.  *See* Pl.'s Georgia Driver's License, Ex. 5 (Doc. # 38-1).

## B.     Procedural History

Ms. Motley originally filed this putative class action on November 19, 2018—together with Plaintiffs Lakendra Cook and Christopher Gray—to challenge the suspension of their driver's licenses for non-payment of traffic tickets.  Mr. Gray voluntarily dismissed his claims on January 18, 2019, after the reinstatement of his driver's license.  This court dismissed the action without prejudice on May 1, 2019, finding that Ms. Motley and Ms. Cook lacked standing to challenge the failure-to-pay suspensions because their licenses were suspended for other reasons (*i.e.*, failure-to-appear suspensions in separate cases).  *See Cook v. Taylor*, No. 2:18-CV-977, 2019 WL 1938794 (M.D. Ala. May 1, 2019).

Ms. Motley refiled this putative class action on July 3, 2019, after resolving her failure-to-appear suspension.  (Doc. # 1 (Compl.).)  She was the sole proposed representative for a putative class defined as "[a]ll individuals whose driver's licenses [were] suspended for nonpayment of traffic tickets."  (Doc. # 1 ¶ 38.)  Ms.

4

Motley's complaint challenged the constitutionality of Alabama Rule of Criminal Procedure 26.11(i)(3).[2]  It alleged that this rule authorized courts to suspend driver's licenses without prior notice, without an opportunity to be heard, and without a contemporaneous finding that the driver is able to pay but willfully failed to do so.

On behalf of herself and a class of similarly situated individuals, Ms. Motley sought a declaratory judgment that Rule 26.11(i)(3) violated the Fourteenth Amendment's guarantees of due process and equal protection.[3]  She also requested injunctive relief (1) "[p]reventing ALEA from effectuating driver's license suspensions for nonpayment" under Rule 26.11(i)(3); (2) "[r]equiring ALEA to reinstate any driver's license previously suspended" under Rule 26.11(i)(3) "without charging a reinstatement fee, if there is not an independent reason to continue the suspension"; and (3) "[r]equiring ALEA to provide notice to drivers with suspended licenses of their driver's license reinstatement."  (Doc. # 1, at 15 (Compl.).)  Also

---

[2] Rule 26.11(i)(3) provides:  "If the court orders a defendant to pay a fine and/or restitution imposed as a result of a traffic infraction, the court may suspend the defendant's privilege to operate a motor vehicle in this state upon a failure of the defendant to comply with the order of the court"—that is, when the defendant fails to pay the fine.  Ala. R. Crim. P. 26.11(i)(3).  And "[i]f the defendant's privilege to operate a motor vehicle has been suspended for failure to comply with such court order, the privilege may remain suspended until the total amount of the fine and/or restitution imposed is paid." *Id.*

[3] Her claims were premised on the doctrine of *Bearden v. Georgia*, 461 U.S. 660 (1983), and its associated cases.  *Bearden* held that, before ordering imprisonment for failure to pay a fine, a sentencing court must determine whether an indigent probationer willfully refused to pay and, if his inability to pay was through no fault of his own, must consider alternative measures of punishment.  *Id.* at 672; (*see also* Doc. # 31, at 11.)

on July 3, 2019, Ms. Motley filed motions for preliminary injunction and for class certification. (Docs. # 3, 5.)

Defendant filed a motion to dismiss on July 24, 2019. (Doc. # 14.) On March 31, 2020, the court granted the motion, denied as moot Ms. Motley's motions for preliminary injunction and for class certification, and dismissed this action with prejudice. (Doc. # 31.) Final judgment was entered the same date.[4] (Doc. # 32.)

Ms. Motley appealed the judgment. Thereafter, the parties moved the Eleventh Circuit to supplement the record and to order jurisdictional briefing to address whether this action is moot because Ms. Motley had paid her traffic ticket fines and related court costs and had obtained a valid driver's license. The motion was "denied without prejudice to the parties seeking an indicative ruling from the district court on this motion or related motions." (Doc. # 38-2 (capitalization omitted).) In the same Order, the Eleventh Circuit stated that this court "should address in the first instance whether this case is moot and, if so, whether an exception to the mootness doctrine applies." (Doc. # 38-2.)

Complying with the Eleventh Circuit's directives, the parties filed a joint motion in this court for jurisdictional briefing and for an indicative ruling on

---

[4] The court was unaware of the intervening change in facts (see paragraphs 7 and 8 on pages 3–4 above) when final judgment was issued.

mootness.  (Doc. # 38.)  The motion was granted, and briefing was ordered.  (Doc. # 39.)  The question of mootness is ready for review.[5]  (*See* Docs. # 38-4, 40, 41.)

## II. DISCUSSION

"Under Article III of the Constitution, federal courts may only hear 'cases or controversies.'" *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250 (11th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)).  "The doctrine of mootness, which evolved directly from Article III's case-or-controversy limitation, provides that 'the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Id*. at 1251–52 (quoting *Tanner Advert. Grp., L.L.C. v. Fayette Cnty., Ga*., 451 F.3d 777, 785 (11th Cir. 2006) (*en banc*)).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  The Eleventh Circuit has "held that a case must be dismissed as moot if events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give the plaintiff meaningful relief." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (cleaned up).

---

[5] The Eleventh Circuit stayed the appeal, "pending an indicative ruling by the district court on whether this case is moot . . . ." *Motley v. Taylor*, No. 20-11688-GG (11th Cir. July 29, 2020) (order granting joint motion to stay the appeal).

On July 3, 2019, when Ms. Motley filed this action, her driver's license was suspended pursuant to Rule 26.11(i)(3) for failure to pay fines and related court costs for a traffic infraction.  However, in February 2020, while this action was pending and prior to a ruling on class certification, Ms. Motley paid the balance on her traffic ticket and the associated costs owed to the Montgomery County District Court. Consequently, on February 19, 2020, Ms. Motley's driver's license was placed in a "valid status" by the ALEA (Doc. # 38-1, ¶ 8), and her "privilege to operate a motor vehicle" was no longer suspended, Ala. R. Crim. P. 26.11(i)(3).

The issue is whether these events that culminated in the lifting of the suspension of Ms. Motley's driver's license mooted her claims.  The short answer is "yes, but."  Ms. Motley's claims are moot, but the inherently transitory exception to the mootness doctrine saves the putative class claims.

Ms. Motley's claims are moot.  As of February 19, 2020, Ms. Motley was no longer subject to the suspension that formed the basis of her constitutional claims for declaratory and prospective injunctive relief.  With her suspension lifted, Ms. Motley no longer had "a legally cognizable interest in the outcome" of the suit. *Already, LLC*, 568 U.S. at 91 (cleaned up).  Under traditional mootness principles, Ms. Motley's "suit became moot when her individual claim[s] became moot, because she lacked any personal interest in representing others in this action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) (alteration added).

8

Thus, if Ms. Motley had brought this lawsuit individually, the suit would be moot. This much is not in serious contention. But that is not the end of the inquiry.

Ms. Motley did not bring an individual suit. She brought a putative class action to represent "[a]ll individuals whose driver's licenses are suspended for nonpayment of traffic tickets." (Doc. # 1 ¶ 38.) Defendant argues that the putative class action died alongside Ms. Motley's individual claims because, when her claims became moot, the court had yet to rule on the class certification motion. (Doc. # 40, at 4.) Defendant is correct that "[n]ormally a class action would be moot if no named class representative with an unexpired claim remained at the time of class certification," *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018) (citation omitted), or, as here, prior to a class certification ruling. However, "[w]hen class actions are involved, . . . the Supreme Court has explained that 'the Art. III mootness doctrine' is 'flexible.'" *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980)). The general rule requiring dismissal of a putative class action where the named plaintiff's claim becomes moot prior to certification gives way to certain exceptions.

One exception to the mootness doctrine arising in the class-action context is the inherently transitory exception. The Supreme Court of the United States has recognized that "where a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to

the filing of the complaint." *Genesis Healthcare Corp.*, 569 U.S. at 71 n.2 (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991)); *see also Nielsen v. Preap*, 139 S. Ct. 954, 963 (2019) ("[T]hat a class 'was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction' when . . . the harms alleged are transitory enough to elude review." (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991))).

The inherently transitory exception "was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis Healthcare Corp.*, 569 U.S. at 76. The Supreme Court has applied the inherently transitory exception in class actions involving individuals detained for indeterminate periods of time. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the named plaintiffs sought to represent a class of pretrial detainees who under Florida law were deprived of a prompt hearing on probable cause. When the named plaintiffs filed the complaint, they were members of the detained class of persons, but the record did not disclose "whether any of them were still in custody awaiting trial when the District Court certified the class." *Id.* at 110 n.11 The Court held that the case fell within a "suitable exception" to the mootness doctrine:

> The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after

> trial.  It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class.  Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

*Id.*; *see also Genesis Healthcare Corp.*, 569 U.S. at 71 n.2 (noting that *Gerstein*'s holding "was developed in the context of class actions under Rule 23 to address the circumstance in which a named plaintiff's claim becomes moot prior to certification of the class"); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (applying the inherently transitory exception to save the class claims of pretrial detainees challenging the constitutionality of pretrial detention procedures where the named plaintiffs' claims became moot prior to class certification (citing *Gerstein*, 420 U.S. at 110 n.11)); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 705 (11th Cir. 2014) ("The recognition that a class-action may not be moot when individual claims become moot before certification was dictum in *Sosna* [*v. Iowa*, 419 U.S. 393 (1975)], but the Supreme Court soon made it a holding [in *Gerstein v. Pugh*, 420 U.S. 103 (1975).]).[6]

---

[6] In *Stein*, the Eleventh Circuit held that the named plaintiffs' class claims were not moot under the inherently transitory exception where they had rejected offers of judgment under Federal Rule of Civil Procedure 68.  *See* 772 F.3d at 702. It is unnecessary to delve further into *Stein*'s analysis because the facts permitting the exception are different from those presented in this case.

Taking the lead from Supreme Court decisions on the inherently transitory exception, the Sixth and Seventh Circuits have focused on the uncertainty of the duration of the claim from its outset.  The Sixth Circuit has ruled that "[t]he key inquiry for assessing whether something is transitory is not merely how long a claim is likely to remain active," but instead "is the uncertainty about the length of time a claim will remain alive."  *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017) (citation and internal quotation marks omitted); *Wilson*, 822 F.3d at 945 ("We think Plaintiffs have the better argument that the uncertainty about how long an injury caused by ongoing conduct will persist can also render a claim inherently transitory."). Similarly, the Seventh Circuit rejected a "bright-line rule" that restricts the inherently transitory exception only "to a claim that has been alive beyond a given number of days."  *Olson v. Brown*, 594 F.3d 577, 582–83 (7th Cir. 2010).  "While the ultimate length of confinement does affect the applicability of the 'inherently transitory' exception, the essence of the exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class."  *Id.* at 582.  In *Olson*, the uncertainty arose because "[a]n individual incarcerated in a county jail may be released for a number of reasons that he cannot anticipate."  *Id.* at 583.  The Seventh Circuit reasoned that "[t]his uncertainty is precisely what makes the 'inherently transitory' exception applicable in this case."  *Id.*

12

The Second and Fifth Circuits, as well as district courts, have adhered to a similar view. *See Ward v. Hellerstedt*, 753 F. App'x 236, 242 (5th Cir. 2018) (setting forth the factors that "Supreme Court jurisprudence suggests . . . are pertinent" to whether an injury is inherently transitory, including whether "uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct"); *Comer v. Cisneros*, 37 F.3d 775, 798–99 (2d Cir. 1994) (applying the inherently transitory exception to save class claims for individuals who were on waiting lists for federal public housing, which for some plausibly could extend to nine years); *G.R.X. Through H.R.X. v. Foxhoven*, No. 417CV00417SMRHCA, 2018 WL 4701869, at *3 (S.D. Iowa June 28, 2018) ("[T]he uncertainty surrounding whether any specific named plaintiff's claim would persist through the adjudication of a motion for class certification has been noted as the predominant rationale for the application of the [inherently transitory] exception." (citations omitted)); *Thorpe v. District of Columbia*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013) (applying the "inherently transitory" exception to putative class-action claims of nursing home residents because "[t]he length of any individual's stay in a nursing facility is impossible to predict, so even though there are certainly individuals whose claims will not expire within the time it would take to litigate their claims, there is no way for plaintiffs to ensure that the Named Plaintiffs will be those individuals"); *Moreno v. Napolitano*, No. 11 C 5452, 2012 WL 5995820, at *6 (N.D. Ill. Nov. 30, 2012)

13

("If the length of a claim cannot be determined at the outset and is subject to a number of unpredictable factors, it is inherently transitory." (citation and internal quotation marks omitted)).  Recent Supreme Court jurisprudence suggests that these courts' focus—on the uncertainty of the claim's duration—is appropriate.  *See Nielsen*, 139 S. Ct. at 963, 976 (concluding that the class claims challenging the Department of Homeland Security's practice of detaining without bail immigrants who had been convicted of certain crimes and were awaiting the conclusion of removal proceedings were transitory because they end "as soon as the decision on removal is made," *id.* at 963 (plurality opinion of Alito, J., joined by Roberts, C.J., and Kavanaugh, J.), even though such immigrants "are held, on average, for one year, and sometimes longer," *id.* at 976 (Thomas J., joined by Gorsuch, J., concurring in part and concurring in the judgment) (internal quotation marks omitted).

Lower "[c]ourts have distilled from *Gerstein* two requirements for the 'inherently transitory' exception to apply:  (1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Wilson*, 822 F.3d at 945 (citation omitted); *see also Olson*, 594 F.3d at 582 (The inherently transitory exception kicks in when "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough

for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." (citing *Gerstein*, 420 U.S. at 110 n.11)).  Applying these requirements (in reverse order), the court finds that the inherently transitory exception saves the uncertified class claims from mootness, notwithstanding that Ms. Motley's individual claims are moot.

To show that "it is certain other class members are suffering the injury" that she suffered, *Wilson*, 822 F.3d at 945 (citation omitted), Ms. Motley relies on 2018 data from the ALEA.  According to the ALEA, at least as of April 20, 2018, "[n]early 23,000 Alabama driver's licenses [were] suspended for nonpayment in Alabama" pursuant to Rule 26.11(i)(3).  (Doc. # 38-4, at 5 (citing Doc. # 7-1 at 2).)  Defendant devotes only a footnote to rebuttal argument on this requirement.  He does not challenge the validity of the 2018 data.  Rather, he argues that because "all traffic tickets issued since November 30, 2018 provide notice of the availability of installment plans and of automatic suspensions for failure to pay," the purported "class of people who are similarly situated and *continue* to be subject to the challenged conduct must be shrinking each day." (Doc. # 40, at 5 n.1 (emphasis in original).)  But Defendant presents no *evidence* that the revised notification on the uniform traffic ticket has had the effect of decreasing continuous class members by numbers so significant to render the class obsolete.  Defendant's suggestion does not negate the evidence supporting the prospect of a continuous class of Alabamians

whose driver's licenses are suspended for failure to pay.[7]  Absent evidence to the contrary, the court finds that based on the ALEA statistics, Ms. Motley has shown that it can be "safely assume[d]" that others in the putative class will continue to have a live interest in this litigation.  *Gerstein*, 420 U.S. at 110 n.11 (alteration added).

The discussion turns to the remaining requirement—whether it is uncertain that a single plaintiff would remain subject to suspension long enough to permit class certification.  Defendant does not appear to dispute that the putative class claims are of uncertain duration.  Rather, Defendant's argument concentrates on the period of time Ms. Motley's license was suspended for failure to pay—from January 8, 2014, to February 19, 2020.  Defendant contends that a six-year license suspension is not transitory.  Further, he says that this court's ruling on the class certification motion took only nine months:  "Comparing the two spans, the time this Court took to rule on Ms. Motley's class certification motion is approximately 12% of the time that Ms. Motley's claim was live."  (Doc. # 40, at 5; *see also* Doc. # 40, at 5 n.3 (noting that the nine-month timeframe "is adopted merely for the sake of argument and does

---

[7] This court previously rejected Defendant's argument—albeit presented in a different form—that the November 30, 2018 traffic ticket revision mooted Ms. Motley's claims.  (*See* Doc. # 31, at 23 (rejecting Defendant's contention "that this controversy is moot because Alabama's traffic tickets have been revised to warn recipients of the possibility of automatic license suspension for nonpayment of traffic fines and because the tickets now 'provide[] constitutionally sufficient notice of the recipient's ability to have his or her ability to pay any associated fine taken into account.'" (citation omitted)).

not mean that any claim that would become moot in fewer than nine months would necessarily meet the inherently transitory exception").)   On the other hand, emphasizing the fluidity of an indigent Alabamian's future ability to pay a fine, Ms. Motley contends that it is impossible to know how long the putative class members will remain unable to pay their traffic violation fines and that the class regularly adds new members as others depart after paying their fines.

Defendant's argument has some surface appeal.  Neither a six-year driver's license suspension nor a span of nine months for a judicial ruling on a pending motion seems inherently brief.  But the legal backhoe exposes the subsurface flaws in Defendant's argument.

First, a six-year driver's license suspension for an unpaid traffic ticket was the case for Ms. Motley; however, Defendant's focus on the realized duration of Ms. Motley's license suspension is misguided.  "To be sure, in some of the Supreme Court cases applying th[e inherently transitory] exception, the duration of the challenged conduct was quite short."  *Wilson*, 822 F.3d at 945 (citing cases).  But the Supreme Court, as well as lower courts, have emphasized that whether the claim is inherently transitory depends upon the uncertainty, not the ultimate fact, of the claim's longevity.  *See id.* ("*Gerstein* focused on the fact that '[t]he length of pretrial custody cannot be ascertained at the outset'" (citing *Gerstein*, 420 U.S. at 110 n.11)); *see also supra*, at 9–14 (collecting cases).  The inquiry into the inherently transitory

nature of the claim is mostly prospective; hindsight is not particularly helpful. *See,*
*e.g.*, *Olson*, 594 F.3d at 582 ("[T]he crux of the 'inherently transitory' exception is
the uncertainty about the length of time a claim will remain alive.").

Here, at the inception of her suspension, it was problematic to predict whether
or when Ms. Motley's claims would expire. Indeed, Ms. Motley's situation
exemplifies the potential transitory nature of an individual's financial resources (or
lack thereof) for paying overdue traffic infraction fines. Prior to receiving the
settlement check that put her back in the licensed driver's seat, Ms. Motley had
insufficient funds to pay the traffic infraction fines while working "temp-to-hire"
jobs and while receiving unemployment benefits after being laid off from work
(Doc. # 5-1 ¶ 11 (Pl. Decl.).) The financial mechanism that permitted Ms. Motley
to pay her fines—a $5,000 settlement check—was "impossible to predict" at the time
she filed the complaint. *Thorpe*, 916 F. Supp. 2d at 67. In other words, the
determination of whether Ms. Motley's claims would survive through resolution of
class certification "would require a high degree of predictive abilities—even
bordering on clairvoyance—on the part of [Ms. Motley]." *G.R.X. Through H.R.X.*,
2018 WL 4701869, at *3. The characteristics of the putative class claims make them
likely to elude review if they do not fall within the inherently transitory exception to
the general mootness rule.

Second and relatedly, Defendant's formulation of the inherently transitory exception is too narrow: "Whether claims are inherently transitory is an inquiry that must be made with reference to the claims of the class as a whole as opposed to any one individual claim for relief." *Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011). The same uncertainty about the probable duration of Ms. Motley's claims exists as to the claims of the members of the putative class. There is no way to determine how long their driver's license suspensions for unpaid traffic violation fines will persist so as to render the class-action claims inherently transitory. An indigent Alabamian with a suspended driver's license might fortuitously experience an increase in income, be it through marriage, inheritance, educational advancement, or a job promotion. *Cf. Bearden v. Georgia*, 461 U.S. 660, 666 n.8 (1983) ("[A] defendant's level of financial resources is a point on a spectrum rather than a classification."). Family or friends might intervene with a loan or with gifted funds to help a class member pay his or her outstanding traffic ticket. On the other hand, an Alabamian with a suspended driver's license for failure to pay a fine for a traffic infraction might agree to a determinate payment plan that is affordable at its inception but that, because of changed circumstances, later becomes unsustainable. Such potential circumstances are limitless—"job loss or a pay cut; unexpected medical or funeral bills or sudden disability or illness[;] . . . divorce; the death of a spouse or the birth of a child; rent increase or eviction; plumbing, heating, or cooling

repairs; or the economic fallout caused by COVID-19." (Doc. # 38-4, at 7.) Regardless of whether the financial resources available to a putative class member work to extend or shorten the duration of a driver's license suspension for failure to pay a traffic infraction fine, it remains difficult to ascertain how long each putative class member will be subject to a driver's license suspension for failure to pay.

The parties have not cited a decision with similar facts where the inherently transitory nature of the claim was tied to an individual's financial ability to pay a fine. Defendant has not demonstrated, though, that Ms. Motley's and her proposed class's indeterminate situations are any more predictable than those of convicted immigrants jailed without bail pending removal proceedings, *Nielsen*, 139 S. Ct. at 960–61, 963; of pretrial detainees awaiting probable cause hearings, *Gerstein*, 420 U.S. at 110 n.11; of individuals experiencing delays in their Medicaid eligibility determinations, *Wilson*, 822 F.3d at 939–42; of inmates subject to transfer from a temporary detention center, *Olson*, 594 F.3d at 579; and of individuals on waiting lists for federal public housing, *Comer*, 37 F.3d at 780.

Third, Defendant's argument that the protracted duration of Ms. Motley's license suspension permitted ample time for this court to decide the issue of class certification omits mention that there was not a *substantive* ruling on the motion for class certification. The one-sentence ruling denying the motion for class certification as moot espoused no opinion on the merits of class certification; the

motion's fate was finalized by the demise of the substantive merits of Ms. Motley's constitutional claims.   (*See* Doc. # 31, at 1–79 (Mem. Op. & Order granting Defendant's motion to dismiss).)   This argument is transparently deficient because there was not a reasoned ruling on the merits of the motion for class certification prior to Ms. Motley's individual interest expiring.   The argument also distracts from the issue of a claim's uncertainty.

Defendant's other arguments urging a finding of mootness also have no traction and warrant only a mention.   Defendant argues Ms. Motley should not be able to benefit from the inherently transitory exception because she unjustifiably delayed in filing this lawsuit.   As Defendants emphasize, Ms. Motley's injury (*i.e.*, her license suspension for failure to pay) occurred on January 8, 2014, yet she did not file this suit until July 3, 2019.   Defendant points to no evidence that any time prior to Ms. Motley's filing suit in July 2019, she knew that her live claim would become moot in February 2020.   There is no evidence of such knowledge or that she intentionally delayed filing suit.   *See Olson*, 594 F.3d at 582 (distinguishing cases where it had held that "the 'inherently transitory' exception did not apply because in both cases the named plaintiffs knew, from the outset, exactly how long their claims would remain alive but chose to wait to file for class certification until the claim was nearly moot or already moot" (citations omitted)).   Defendant's argument is more akin to a statute of limitations defense, than one signifying a moot controversy.   (*See*

Doc. # 40, at 5 & n.4 (arguing that Ms. Motley "delayed the filing of this suit until *years* after her injury first accrued" and "waited so long to bring suit that there was a disagreement as to whether her suit was time-barred").)  This court has rejected Defendant's statute of limitations defense with regard to her *Bearden* claim (Doc. # 31, at 27–39), and that ground need not be plowed again here.

Finally, Defendant faults Ms. Motley for failing to notify the court of the August 9, 2019 settlement agreement in the unrelated class lawsuit in which she served as a class representative.  (Doc. # 40 at 5 n.3.)  It is unclear how this argument, attempted only in a footnote, advances Defendant's position against application of the inherently transitory exception to the mootness doctrine.  The fact that Ms. Motley entered into the settlement agreement on August 9, 2019—and ultimately received a $5,000 payout—does not speak to whether Ms. Motley's claims were inherently transitory at the outset.  Notably, though, notice to this court likely would have avoided a remand on appeal.

Because Ms. Motley satisfies both elements of the inherently transitory exception to the mootness doctrine, this exception saves this putative class action from mootness.  Defendant's arguments to the contrary are not persuasive.

## III.   CONCLUSION

Based on the foregoing, and in compliance with the Eleventh Circuit's directives, the court issues an indicative ruling that Ms. Motley's action became

moot when the suspension of her Alabama driver's license was lifted upon payment of her traffic infraction fines and related court costs, but that this putative class action falls within the inherently transitory exception to the mootness doctrine.

It is ORDERED that the Clerk of the Court shall send copies of this memorandum opinion to counsel of record and to the Clerk of the Court for the Eleventh Circuit Court of Appeals.

DONE this 22nd day of June, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE